# EXHIBIT A

BEFORE THE CITY OF MARION
AND THE MARION POLICE DEPARTMENT
MARION, PERRY COUNTY, ALABAMA

Craig T. Hill and Tamela Allen
Hill, Individually and as Husband
and Wife,

    Petitioners,

vs.

The City of Marion, Alabama;
Marion Police Department; Tony
Bufford, Individually and in his
capacity as Marion Chief of Police;
Donald Gantt, Individually and in
his capacity as a member of the
Marion Police Department and
fictitious defendants "A" through
"H," inclusive, being those persons
or entities who or which caused or
contributed to the injuries and
constitutional deprivations which
are complained of herein, whose
identities are presently unknown but
whose names will be added later by
way of amendment when they become
known,

    Respondents.

CLAIM NO.: _____

*[Stamp: MARION POLICE D__ / 401 PICKENS STR__ / MARION, AL. 36756 / 2/20/09 / Smith]*

## VERIFIED STATEMENT OF CLAIMS FOR DAMAGES

TO:  City of Marion, Alabama
     c/o Carolyn Thomas, City Clerk
     123 East Jefferson Street
     Post Office Drawer 959
     Marion, Alabama 36756

     City of Marion Police Department
     c/o Tony M. Bufford, Chief of Police
     401 Pickens Street
     Marion, Alabama 36756

     COME NOW the petitioners, Craig T. Hill and Tamela Allen Hill, individually and as Husband and Wife and, acting through their undersigned

*[Handwritten: Rec'd 02-20-09]*

*[Stamp: Attorney Copy]*

counsel of record and pursuant to the relevant provisions of 42 U.S.C. §1983, as amended ("the Civil Rights Act of 1871" or "federal law" herein) and §§11-47-23, 11-47-190, 11-47-191 and 11-47-192 of the *Code of Alabama* (1975) ("State law" herein), they make and file this their *Verified Statement of Claims for Damages*. As and for the factual and legal bases for the filing and prosecution of such claims, the petitioners say and represent herein as follows, *viz:*

1.  In the early morning hours of on or about August 30, 2008, at approximately 2:00 a.m., petitioner Tamela Allen Hill was driving on a public road or street in Marion, Alabama when she was pulled over by then-Marion Police Officer Donald Gantt. Officer Gantt approached petitioner's car on the driver's side and asked Ms. Hill if she knew why he had pulled her over, to which she replied, "No." Officer Gantt stated to Ms. Hill that she had been "speeding" and that this was why he stopped her. Hill denies that she was traveling in excess of the posted speed limit or, for that matter, that there was any legitimate (e.g., lawful) basis for the stop by Officer Gantt.

2.  After the stop and without the issuance of a traffic citation, or the making of an arrest, Officer Gantt told Ms. Hill, without explanation, that he wanted permission to search her vehicle. Although she did not understand the basis for the officer's request, Ms. Hill consented to the search. Officer Hill then proceeded to search through all areas of the passenger compartment including under the seats, in the console and in the glove box. He then instructed Ms. Hill to open the trunk of the car and he searched it, never telling petitioner the reason for his request or what (if anything) he was looking for.

3.  Following the fruitless search of the vehicle, Officer Gantt went back around to the driver's side of the vehicle where Ms. Hill was once again

sitting in the driver's seat. Gantt then told Ms. Hill that he wanted to search her person and he told her to get out of the car and remove her jeans. As more clearly reflected by the attached affidavit of petitioner Tamela Hill (Exhibit "A," incorporated herein), Ms. Hill was "dumbfounded by this command" and she did not know what to do. She testifies that she was frightened of the officer, who had his flashlight on and who was, by this time, shining it directly in her face.

4. Officer Gantt told Ms. Hill to get out of the car, stand up and do what he told her to do or she would "regret it." According to petitioner's testimony, she was intimidated by the officer and the circumstances since she was alone with a large, uniformed and armed, male officer in the early morning hours and because she did not see anyone else on the street or in the immediate area. Ms. Hill testifies that she did not feel she had any choice except to obey the orders of the police officer. Moreover, she was concerned that she "might be arrested" if she refused to do as she was told. Accordingly, petitioner Hill got out of the car and dropped her pants to her ankles. Petitioner was nude from the waist down, as she had hurriedly left her house to buy aspirin and cigarettes and she was not wearing underwear beneath her jeans.

5. Officer Gantt told petitioner to "bend over," at which time he shined the flashlight on her buttocks and genital area. He then proceeded, according to petitioner's testimony, to "look [her] over from top to bottom," making sexually-related comments to her as more fully set out in her attached affidavit testimony. By this point, Ms. Hill was extremely frightened of Officer Gantt and was concerned "that he was possibly going to sexually assault [her] beyond what had already happened." Gantt told Ms. Hill to stand back up and lift up her shirt. She did so. Officer Gantt then unzipped his pants and took out

3

his penis, forcefully grabbing petitioner's right wrist and pulling it toward his penis, which was now erect, asking Ms. Hill what she was "willing to do" for him. Ms. Hill, according to her testimony, was now "terrified by the situation" and she asked Officer Gantt to call Marion Chief of Police Tony Bufford. Officer Gantt refused to do so, adding that if Ms. Hill told anyone about what had happened she would "regret it."

6. Officer Gantt told Ms. Hill that he knew where she lived and that if she told anyone what happened she would "go to jail" and she would "get a lot of tickets." About this same time, Gantt received a call on his radio and he told Ms. Hill that she could go for the moment. He told Ms. Hill to give him her cell phone number and that she was to meet him in one hour at the Marion ball park. Because she was afraid for her personal safety, and because she thought this might be her only chance to escape from the officer, Ms. Hill gave Officer Gantt her cell phone number. He got into his police vehicle and drove away, while Ms. Hill immediately left the area and drove her car home. She was crying and upset all the way home, not knowing what she was going to do.

7. Immediately after arriving at home, Ms. Hill told her husband, petitioner Craig Hill, exactly what had happened. She also called her mother and told her the same thing. Ms. Hill's husband and mother were both, of course, extremely upset about what had occurred. Ms. Nita Russell, Ms. Hill's mother, told Ms. Hill that she should call Chief of Police Tony Bufford "right away" and tell him precisely what had occurred. Petitioner Craig Hill called to speak with Chief Bufford and, after getting a prompt return call from the Chief, Craig told him what had happened. Chief Bufford told petitioner Craig Hill that Ms. Hill should call Gantt back and go through with the meeting which Gantt was

4

demanding. The Chief indicated that he would be at the park when Tamela Hill met with Officer Gantt. Although Ms. Hill did not want to do what was requested, and while she was very afraid about having any other contact with Officer Gantt, she agreed to do so because of the request made by Chief Bufford and because she knew that "something had to be done."

8. Ms. Hill called Officer Gantt back and told him she would meet him at the park as earlier instructed. Gantt said for her to go ahead to the park and he would be there shortly. Ms. Hill went to the ball park, accompanied by petitioner Craig Hill; Chief of Police Tony Bufford; the Chief's father and another male individual who she believes was a cousin of Chief Bufford. She waited on the driveway inside the park, some distance up from where Chief Bufford and the others were watching (in the shadows, and out of sight to Officer Gantt). Based on the estimate of petitioner Hill, Officer Gantt pulled up at the park, driving his Marion Police Department vehicle, at or around 4:10 or 4:15 a.m.

9. Officer Gantt pulled alongside petitioner Tamela Hill's vehicle, got out of the police car and leaned up against it after closing the door. Almost immediately after doing so, he unzipped his pants, as before, and he took out his penis which again was erect according to the testimony of Ms. Hill. She testifies that she became "very nervous about the situation, since the Chief was still a good distance away" and out of sight. On a pretense, she went over to her vehicle and, while inside, blew the horn but acted as if her doing so had been an accident. Chief Bufford then quickly rushed to the scene in his police vehicle, at which time he harshly addressed Officer Gantt, asking him what he was doing, and telling him to "[g]et up to the police station!" Bufford then asked petitioners Craig and Tamela Hill to come to the police station for questioning.

10. Petitioners were at the Marion Police Department only a short period of time, during which time Craig Hill talked with the Chief of Police for approximately thirty (30) minutes. Following the conversation, the petitioners were told they could go home. (See: Attached Affidavit testimony of petitioner Craig Hill, incorporated herein as Exhibit "B" hereto) The following day, petitioners were visited at their home by Marion Police Officer Mack Williams, who stated that Chief Bufford wanted to see the petitioners again for questions.

11. Petitioner Tamela Hill was told she would be meeting with "an ABI agent" about what had happened to her. She was, in fact, questioned by an individual who identified himself as an ABI agent; this person asked her a series of questions about what had happened in her encounters with Officer Gantt and he took notes as he questioned her.

12. Chief Bufford was in the station but had little to say to petitioner Tamela Hill. However, the Chief stated to petitioner Craig Hill that Officer Gantt was "already on suspension" from the Police force and that the petitioners should leave things with him and that he (Bufford) would "turn in a report to the District Attorney" and a full investigation would be conducted by the ABI. Chief Bufford further stated to petitioner Tamela Hill that if she did nothing further about the situation he would see to it that she had permanent "immunity" in Marion for arrests for bad checks, traffic stops or citations. He asked the petitioners to leave the matter with him because he was worried about the matter "getting out to the public" and "making the Police Department look bad." He stated that the City of Marion already had a "rough enough time" with people not supporting the Police Department and that he wanted the petitioners to just

let him "handle" the situation himself without either of them doing anything more about it.

13. Since the time of the meetings between petitioners and Chief Bufford, no one from the Alabama Bureau of Investigation ("ABI") has contacted either of them to conduct any type of investigation or to ask any questions about what happened in regard to Officer Gantt. No one from the Perry County District Attorney's Office has contacted petitioners except for one telephone call petitioner Tamela Hill had with DA Mike Jackson. No one from the City of Marion or the Marion Police Department has asked any further or additional questions about the misconduct of Officer Gantt. Ms. Hill has been informed that the individual who identified himself to her as "an ABI agent" is, in fact, not an agent with the ABI but he is, rather, a member of the Marion Police Department by the name of Mike Meyer. It is the petitioner's understanding that he refers to himself as a "criminal investigator" with the Marion Police Department. Johnny Tubbs, who has been an area supervisor for the ABI in Marion, has advised petitioner and her family that no one with the ABI was assigned to work on any investigation related to the matters complained of herein.

14. The encounters with, and the actions taken by, former Marion Police Officer Donald Gantt, including the unnecessary and unwarranted search of Ms. Hill's vehicle and her person, were extremely embarrassing and upsetting to both of the petitioners. The actions were obviously humiliating, frightening, unwarranted, unauthorized, inappropriate and unlawful. They were actions taken under color of State law, and petitioner Tamela Hill, based on her testimony, felt absolutely compelled by force of law to do what Officer Gantt told her to do. She testifies that she felt fearful for her personal safety and she

was concerned that he would further sexually abuse her if she refused to do what he told her to do. She was fearful she would be arrested if she did not obey the officer. Petitioner Craig Hill was frustrated and emotionally disturbed by what occurred in regard to his wife and he was fearful for her safety during the encounter at the Marion ball park. The emotional, psychological and physiological effects of what happened, in regard to both petitioners, including loss of consortium and invasion of privacy, are more fully outlined and described in attached Exhibits "A" and "B," the testimony of the petitioners.

15.  Petitioners Craig and Tamela Hill are here presenting their claims for damages to the Municipal Clerk of the City of Marion, and the Marion Police Department, for injuries arising out of the negligent, intentional, reckless and/or wanton conduct of the City of Marion; the Marion Police Department; Chief of Police Tony Bufford; Marion Police Officer Donald Gantt and any and all other agents, servants or employees of the City of Marion or Marion Police Department as may be liable to the petitioners in damages for the matters complained of in connection with this matter. These claims include, but are not limited to, conduct which is made actionable under both 42 U.S.C. §1983 (the "Civil Rights Act of 1871," as amended) as well as Alabama state law, and whether pursued in the Circuit Court of Perry County, Alabama or in United States District Court. Claimants claim damages against any and all potential defendants, jointly and severally, in the amount or sum of Five Hundred Thousand ($500,000.00) Dollars for petitioner Tamela Allen Hill and in the amount or sum of Five Hundred Thousand ($500,000.00) Dollars for petitioner Craig T. Hill. They also claim interest, costs and reasonable attorneys' fees as determined through settlement or litigation, at their option, and the award of

8

any and all such other, further or additional relief, general or special, as may be warranted under the relevant facts and circumstances and by any and all such other and further discovery as may be had in this matter and as provided for under applicable State and federal law.

16. Pursuant to the relevant provisions of §11-47-191 of the *Code of Alabama* (1975) the petitioners, prior to the filing of any civil action(s) for damages and irrespective of any conclusions as to liability which may have been drawn or inferred by themselves, do hereby demand of the Mayor or other Chief Executive Officer of the City of Marion, Alabama, the name or names of any such other person or persons or corporation(s) as may be liable, jointly with the City of Marion and/or the Marion Police Department, to such injured parties for the wrongs complained of herein.

---

### NOTICE REGARDING CLAIMS

THE FILING OF THIS SWORN STATEMENT OF CLAIMS IS A STATUTORY PRE-REQUISITE TO THE COMMENCEMENT OF A CIVIL ACTION FOR DAMAGES IN STATE OR FEDERAL COURT. ANY AND ALL RESPONSES SHOULD BE DIRECTED ONLY TO THE UNDERSIGNED COUNSEL FOR THE PETITIONERS AND THERE SHOULD BE NO DIRECT COMMUNICATION OR CONTACT WITH THE PETITIONERS REGARDING THIS MATTER OUTSIDE THE PRESENCE OF THEIR LEGAL COUNSEL.

DATED: Marion, Alabama this the 19th day of February, 2009.

Respectfully submitted,

**LEWIS, SMYTH & WINTER, P.C.**
611 Helen Keller Boulevard
Post Office Box 20114 (35402)
Tuscaloosa, Alabama 35404
Telephone: (205) 553-5353

By: _____
Justice D. Smyth, III

By: _____
Albert G. Lewis, III
*Counsel to the Petitioners*